IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GREEN MUNIYR TREVOR,                    :
    Plaintiff,                              :
                                            :
          v.                          :          CIVIL ACTION NO. 23-CV-4847
                                            :
KHALID MUMIN, *et al.,*                  :
    Defendants.                             :

**MEMORANDUM OPINION**

*Pro se* plaintiff Green Muniyr Trevor ("Plaintiff") asserts twenty-one causes of action against four individuals associated with, in varying degrees, the Mathematics, Civics and Sciences Charter School (the "Charter School"), a public charter school in Philadelphia, Pennsylvania. Plaintiff's claims, ranging from constitutional violations to violations of the United Nations Universal Declaration of Human Rights and the "American Declaration on Indigenous Peoples,"[1] all relate to his son's enrollment as a student at the Charter School. According to Plaintiff, his son was required to abide by school policies, including uniform and attendance policies, contrary to Plaintiff's cultural and religious beliefs. (Am. Compl., ECF No. 7, ¶¶ 53, 55.) The Charter School policies were allegedly "stopping [Plaintiff] from exercising all of his natural parental rights and cultural customs." (*Id.* ¶ 55.) For the harms he suffered from these purported violations, Plaintiff requests declaratory and unspecified injunctive relief, as well as monetary and punitive damages. (*Id.* ¶ 77.)

---

[1] Plaintiff's Amended Complaint repeatedly uses the phrase "The American Declaration on Indigenous People's." (*See* Am. Compl. ¶¶ 10–21, 23–31.) We take his use of this phrase to refer to the American Declaration on the Rights of Indigenous Peoples, a 2016 declaration passed by the Organization of American States. *See https://www.oas.org/en/sare/documents/decamind.pdf.*

The defendants have all moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, their motions will be granted, and the Amended Complaint is dismissed with prejudice.

### I. FACTS[2]

### A. The Parties

Plaintiff is "a living indigenous Man, sui generis, sui juris in propria persona."  (Am. Compl. ¶ 38.)  He represents that he is a "supporter of a known revolutionary group" and is "not a citizen of any state nor a citizen of the United States but domicile[d] in the free republic of [P]ennsylvania."  (*Id.* ¶ 73.)  His son—who is not a Plaintiff in this case—attended the Charter School in the fall of 2023, when the events giving rise to the Complaint took place.  (Trevor Aff. ¶ 12.)

Defendants are Khalid Mumin ("Mumin"), Secretary for the Pennsylvania Department of Education; Tony Watlington, Sr. ("Watlington"), Superintendent of the School District of Philadelphia; Veronica Joyner ("Joyner"), Chief Administrator and Founder of the Charter School; and Spencer Hill ("Hill"), the Charter School's Treasurer and a member of its Board of Trustees (collectively, "Defendants").  (Am. Compl. ¶¶ 39–41.)

Plaintiff purports to sue Defendants "in their individual capacity and not as agents of the State [o]f Pennsylvania or the United States."  (Am. Compl. ¶ 69.)

### B. The Conflict at School

In October 2023, Plaintiff sent a letter to Joyner, the chief administrator and founder of the Charter School, expressing concern about the school's policies.  (Trevor Aff. ¶ 1.)  In the letter, he

---

[2]  All facts are taken from Plaintiff's Amended Complaint (ECF No. 7) and the "Affidavit and Memorandum in Support of Petition for Deprivation of Human Rights/Conspiracy to Deprive Plaintiff of Protected Rights and Failure to Protect Plaintiff from Conspiracy" attached thereto (the "Trevor Affidavit").

explained that he did not want his son to be forced to comply with the school's uniform policy—a dress shirt, dress pants, dress shoes, and a tie—because of the uniform's relation to "British culture." (*Id.* ¶ 2.) He explained that the uniform "is not what his family wear[s]." (*Id.*) In addition to taking issue with the uniform requirement, Plaintiff also explained that he wanted to "homeschool his child 4 (four) days out of every month so that he can make sure his son is developing properly according to their family's religion and culture." (*Id.*)

On November 9, 2023, Plaintiff met with Joyner. She confirmed receipt of Plaintiff's letter and told Plaintiff his son would not be forced to wear a tie to school going forward. (*Id.* ¶ 3.) On November 13, 2023, however, Joyner emailed Plaintiff to explain that "she could not honor his beliefs, views and perspectives because of her school's policy and Pa standards." (*Id.* ¶ 4.) She also claimed that Pennsylvania "compulsory statu[t]es forbid[] children to be absent more than 3 days without explanation." (*Id.*)

During the following week, Plaintiff wrote several more letters. He sent another letter to Joyner, claiming that "she must honor his beliefs views and perspectives pursuant to law and further explaining to her his explanations on his stance." (Trevor Aff. ¶ 5.) He also sent a letter to the Charter School's Board of Trustees, of which Hill was a member, notifying him of the situation and claiming the board must honor his cultural beliefs. (*Id.* ¶ 6.) He sent similar letters to Mumin, Secretary of the Pennsylvania Department of Education, and Watlington, Superintendent of the School District of Philadelphia ("SDP"). (*Id.* ¶¶ 7–8.) An administrative assistant for Mumin confirmed receipt of Plaintiff's letter but told him that "it was a local school district matter and should be handled by" SDP. (Trevor Aff. ¶ 9.) A separate administrator forwarded the letter addressed to Mumin to Watlington's office. (*Id.* ¶ 11.)

On November 20, 2023, Plaintiff picked his son up from school and noticed he was still wearing a tie. (Trevor Aff. ¶ 12.) His son had told his teacher that his father did not want him to wear a tie, and that if he was mandated to wear a tie in order to remain at school, someone should call Plaintiff. *Id.* That same day, Plaintiff forwarded "his letter" to a school receptionist, intending it to reach Joyner and the Charter School Board of Trustees. (*Id.* ¶ 13.)

On December 4, 2023, someone called Plaintiff to pick his son up from school because he was not wearing a tie or a dress shirt, and thus not in compliance with the Charter School's uniform policy. (Trevor Aff. ¶ 15.) Instead of a dress shirt and tie, Plaintiff's son wore a turtleneck shirt and "religious/cultural necklace" representative of his culture. (*Id.*) Plaintiff claims that "[m]embers of the school . . . [were] intending to remove [P]laintiff's child['s] shirt and make him put on a collar school shirt," and "wanted him to cover up his necklace with a tie." (*Id.*) The school, however, apparently did not have a spare shirt of appropriate size for Plaintiff's son, so they called Plaintiff and had him pick his son up. (*Id.*)

Plaintiff again forwarded his letters to Joyner and the Board of Trustees. Joyner allegedly expressed that the "only solution for [P]laintiff's concerns was to remove his son from her school." (Trevor Aff. ¶ 17.) However, Plaintiff's son's mother wanted her son to attend the Charter School, "so [P]laintiff did not agree with removing him to another school." (*Id.* ¶ 18.)

That same day, December 4, 2023, Plaintiff spoke to Joyner on the phone. (*Id.* ¶ 19.) Joyner confirmed receipt of Plaintiff's letters and told him she did not have time to respond. (*Id.*) Joyner told Plaintiff that if he did not want his son to comply with the Charter School's uniform policy, he could enroll his son in a school that did not have a uniform policy. (*Id.*) Plaintiff told Joyner that he wanted his son to attend the Charter School and "expect[ed] her to respect his wishes." (*Id.*)

Unable to reach a mutually agreeable solution, Plaintiff began homeschooling his son "because of discriminatory treatment towards him and his child." (*Id.* ¶¶ 20–21.) Plaintiff then filed this lawsuit.

## II. STANDARD OF REVIEW

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244).

When analyzing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). However, a court may disallow amendment based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

### III.  DISCUSSION

Plaintiff's twenty-one causes of action can be grouped broadly into three categories.  First are his claims purportedly brought under the United Nations Universal Declaration of Human Rights and the American Declaration on the Rights of Indigenous Peoples (Counts II and X-XXI).  Second are his constitutional claims (Counts I, III-V, and VII-IX).  Third is a single count for violation of Federal statutory law, 18 U.S.C. § 241 (Count VI).  We address each category in turn below.

**A. Claims under the Universal Declaration of Human Rights and American Declaration on the Rights of Indigenous Peoples.**

"[T]he Universal Declaration of Human Rights is a nonbinding declaration that provides no private rights of action."  *United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (explaining that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law").  Accordingly, courts in this circuit routinely dismiss, with prejudice, claims brought under it.  *See Smith v. Philadelphia Dep't of Prisons*, No. 25-CV-2448, 2025 WL 1907473, at *3 n.8 (E.D. Pa. July 10, 2025) (collecting cases).  We do the same here.

Plaintiff's claims brought under the American Declaration on Indigenous Peoples are deficient for the same reasons articulated in *Chatman* and *Sosa*.  The American Declaration on the Rights of Indigenous Peoples explicitly notes that it is "not itself legally binding" and "does not, therefore, create new law."  Organization of American States, AG/RES. 2888 (XLVI-O/16), *American Declaration on the Rights of Indigenous Peoples*, 2 n.1 (June 15, 2016), *https://www.oas.org/en/sare/documents/decamind.pdf*.  As a nonbinding declaration, the American Declaration on the Rights of Indigenous Peoples does not provide a private right of

action sufficient to state a claim in federal court. *See, e.g.*, *Van Hope-el v. U.S. Dep't of State*, No. 1:18-CV-0441-JLT, 2019 WL 295774, at *3 n.2 (E.D. Cal. Jan. 23, 2019), *aff'd sub nom. Hope-El v. U.S. Dep't of State*, 2019 WL 3941181 (9th Cir. June 26, 2019) (explaining that there is no private right of action under the American Declaration on the Rights of Indigenous Peoples and citing *Chatman* and *Sosa*).

### B.  Constitutional Claims[3]

Although Plaintiff explicitly denies suing Defendants "as agents of the State of Pennsylvania or the United States," Am. Compl. ¶ 69, he alleges several claims against them for violating his constitutional rights and invokes 42 U.S.C. § 1983 as a basis for this Court's jurisdiction.  (Am. Compl. ¶ 48.)  Mindful of our obligation to construe a *pro se* plaintiff's complaint liberally, we treat Plaintiff's constitutional claims as claims pursuant to § 1983.  Indeed, Plaintiff's constitutional claims are only cognizable to the extent they are brought under § 1983. *See Stephany v. Dep't of Corr.,* 397 F. Supp. 3d 654, 656 (E.D. Pa. 2019) ("The vehicle by which a plaintiff may sue in federal court for a violation of his constitutional rights is 42 U.S.C. § 1983."). To prevail on his constitutional claims, Plaintiff must allege facts supporting an inference that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States."  *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013).  In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated."  *Id.* at 166 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)).  The court must then determine "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Id.*

---

[3] Plaintiff alleges violations of the First Amendment (Count I); the Fifth Amendment (Count III); the Ninth Amendment (Count IV); the Tenth Amendment (Count V); "Article 1 section 10 clause 1" (Count VII); "The Supremacy Clause Article 6 clause 2" (Count VIII); and the Fourteenth Amendment (Count IX).

### i.    First Amendment Claim

Plaintiff claims that two rights were infringed in violation of the First Amendment: his "right to his religious cultural beliefs and views" and "right to association with his son."   Am. Compl. ¶¶ 1–2.  The Court understands the former to be a claim based upon the Free Exercise Clause.  The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof*" and has been made applicable to the States by virtue of the Fourteenth Amendment.  U.S. Const. amend. I (emphasis added); *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990) (hereinafter *Emp. Div. v. Smith*).  However, "the right of free exercise does not relieve an individual of the obligation to comply with . . . a neutral law of general applicability."  *Emp. Div. v. Smith*, 494 U.S. at 879; *see also Smith v. City of Atl. City*, 138 F.4th 759 (3d Cir. 2025) ("Contemporary free-exercise doctrine is guided by the Supreme Court's decision in [*Emp. Div. v. Smith*] and its progeny.").

Here, Plaintiff pleads no facts suggesting that the Charter School's uniform policy was anything other than a "neutral [rule] of general applicability."  *See Emp. Div. v. Smith*, 494 U.S. at 879.  For instance, there is no allegation that the Charter School was "motivated to enact its uniform policy because its administrators disapprove[d] of a particular religion or of religion in general."  *See Jacobs v. Clark County School District*, 526 F.3d 419, 439 (9th Cir. 2008) (upholding school uniform policy against free exercise challenge).  And though Plaintiff claims his son received "discriminatory treatment," that allegation is entirely conclusory and unsupported by the factual allegations in the Amended Complaint.  Indeed, there is no allegation that the uniform policy was applied inconsistently across students.  As such, while the uniform policy may have had the "incidental effect of burdening [Plaintiff's] particular religious practice," the Amended

Complaint fails to plead a violation of the Free Exercise Clause. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

Further to this point, we note that the Ninth Circuit's ruling in *Jacobs v. Clark County School District* is instructive. 526 F.3d 419 (9ᵗʰ Cir. 2008). There, the Ninth Circuit Court of Appeals affirmed dismissal of claims asserting that a mandatory dress code infringed students' Free Exercise rights. *Id.* at 439–440. The Court found "no evidence in the record suggesting that [the school] was motivated to enact its uniform policy because its administrators disapprove[d] of a particular religion or of religion in general." *Id.* at 439 (quoting *City of Hialeah*, 508 U.S. at 532) (internal quotation marks omitted). As a result, the Court noted that the school uniform policy was a "'valid and neutral law[] of general applicability' and, as such, did not implicate the Free Exercise Clause at all." *Id.* at 439 (quoting *Smith*, 494 U.S. at 879). So too here.

As to the purported violation of his First Amendment right to association, the right to intimate association with family members that Plaintiff asserts is a right anchored in the Fourteenth, and not the First, Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617–20 (1984); *see also Clayworth v. Luzerne Cnty., Pa.*, 513 F. App'x 134, 137 (3d Cir. 2013) (explaining that while the First Amendment right to expressive association "protects the ability of individuals to gather in order to pursue political, social, economic, educational, religious, and cultural ends," the "right to intimate association with family members" is "anchored instead in" the Fourteenth Amendment) (citation and internal quotation marks omitted). To the extent Plaintiff intended to argue that the Charter School's attendance policy interferes with his and his son's ability to gather to pursue religious and/or cultural ends, this still misconstrues the right to association, which is specifically geared toward the formation of groups. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958).

9

### ii.    Fifth Amendment Claim

Here, Plaintiff claims that his right to liberty was infringed in violation of the Fifth Amendment.  The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  However, the Fifth Amendment due process clause applies only to the federal government and federal officials.  *See*, *e.g.*, *Flex v. Allentown Police Pension Fund Ass'n*, No. 24-CV-06601, 2025 WL 1426967, at *5 n.2 (E.D. Pa. May 14, 2025) ("Plaintiff cannot bring a due process claim against [defendants] under the Fifth Amendment because they are not federal actors.").  It does not apply to state and local officials.  Here, because Plaintiff sues only state and local officials, his Fifth Amendment claim necessarily fails.  Plaintiff's due process concerns will be analyzed under the Fourteenth Amendment below.  *See id*.

### iii.    Ninth Amendment Claim

The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  It "does not independently provide a source of individual constitutional rights."  *Clayworth*, 513 F. App'x at 137 (affirming District Court's dismissal of Ninth Amendment claim brought under § 1983); *see also Soder v. Chenot*, No. CV-06-1522, 2007 WL 4556670 at *4 (M.D. Pa. Dec. 20, 2007) ("The Ninth Amendment . . . by itself does not confer substantive rights for purposes of § 1983.").  Because the Ninth Amendment does not provide a source of individual constitutional rights, Plaintiff's Ninth Amendment claim will be dismissed.

### iv.    Tenth Amendment Claim

Like the Ninth Amendment, the Tenth Amendment "'has never been recognized as independently securing' any substantive constitutional rights cognizable in a § 1983 cause of action."  *Robinson*

*v. Vaughn*, No. 92-7048, 1993 WL 451495 at \*6 (E.D. Pa. Nov. 1, 1993) (quoting *Strandberg v. City of Helena*, 791 F.2d 744, 748–49 (9th Cir. 1986)).  Because the Tenth Amendment does not provide a source of individual constitutional rights, Plaintiff's Tenth Amendment claim will be dismissed.

### v.    Fourteenth Amendment Claim

Plaintiff claims that "Defendant[s] put policies and statu[t]es over the constitution to infringe upon [Plaintiff's] rights which is in violation of the 14th [A]mendment."  (Am. Compl. ¶ 9.)   Plaintiff's Amended Complaint otherwise does not explain how or why the Charter School's policies violate the Fourteenth Amendment.   Nevertheless, interpreting the claim liberally in Plaintiff's favor, the Court construes this claim as a substantive due process claim under the Fourteenth Amendment.

"To state a substantive due process claim under the Fourteenth Amendment, a plaintiff must establish that he has a protected constitutional interest at issue and that the defendants deprived him of it by engaging in conduct that 'shocks the conscience.'"  *Clayworth*, 513 F. App'x at 136 (citing *Chainey v. Street*, 523 F.3d 200, 219–20 (3d Cir. 2008)).   "Due process protects against arbitrary action, and 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'"  *Id.*

Plaintiff has a "right to make child-rearing decisions" protected by the Fourteenth Amendment.  *See Doan v. Downingtown Area School District*, 2020 WL 4699046, at \*5 (E.D. Pa. August 13, 2020) (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Pierce v. Society of Sisters*, 268 U.S. 510 (1925)).  That right is not absolute, however.  Indeed, "[t]he Third Circuit considers the right of parental autonomy to be 'a limited one . . . [that] is neither absolute nor unqualified.'"  *Id.* (second alteration in original) (citing *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 247

(3d. Cir. 2008)).  As a result, "[t]here are a number of cases where courts have upheld the constitutionality of school programs or policies that parents allege interfere with their right to dictate the upbringing of their child."  *Id.* at *6 (collecting cases).

This is one of those cases.  Accepting the well-pled facts of Plaintiff's Amended Complaint as true, as we must, the facts alleged are insufficient to show that Plaintiff has a plausible claim for a substantive due process violation.  Those facts merely indicate that Plaintiff had genuine moral objections to the Charter School's policies and curriculum; he made his objections known, but his son was not given a religious or cultural exemption to them; and he eventually withdrew his son from the Charter School in favor of homeschooling.

The Constitution does not guarantee Plaintiff the right to dictate school policy.  *See Doan*, 2020 WL 4699046, at *6 (quoting *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533–34 (1st Cir. 1995)  ("If all parents had a fundamental constitutional right to dictate individually what the schools teach their children, the schools would be forced to cater a curriculum for each student whose parents had genuine moral disagreements with the school's choice of subject matter.")).  Nor does it require the Charter School to exempt his son from otherwise generally applicable and consistently applied policies.  *See Jacobs*, 526 F.3d 419 at 439.

In sum, Plaintiff does not come close to explaining how the Charter School's uniform and attendance policies, or curriculum, shock the conscience or otherwise violate his constitutional rights.  Plaintiff's Fourteenth Amendment Claim will therefore be dismissed.

### vi.    Claims under "Article 1 section 10 clause 1" and The Supremacy Clause.

Plaintiff claims that his "right to contract with his god and child [were] infringed upon" by the Charter School's policies, in violation of "Article 1 section 10 clause 1"—presumably referring to Article 1, Section 10, Clause 1 of the United States Constitution.  (Am. Compl. ¶ 7.)  That clause provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const.

art. I, § 10, cl. 1.  The elements of a Contracts Clause claim are (1) the existence of a valid contract, (2) a state law or regulation that substantially impairs that contractual relationship, and (3) that the impairment is not reasonable or necessary to serve an important public purpose. *See Energy Reserves Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983).  Plaintiff does not plead the existence of a valid legal contract between himself and his god or his child, much less any facts suggesting that the Charter School's uniform or attendance policy "substantially impairs" such a contract.  The claim is meritless and will be dismissed.

"The Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 103 (1989).  "[T]hat Clause is not a source of any federal rights"; it "'secure[s]' federal rights by according them priority whenever they come in conflict with state law."  *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613 (1979).  Plaintiff's cause of action based on the Supremacy Clause is meritless and will be dismissed.  *See also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (holding that "the Supremacy Clause . . . does not create a cause of action," and "is not the source of any federal rights," but instead "instructs courts what to do when state and federal law clash") (citations and quotation marks omitted).

## C. Statutory Claim

Finally, Plaintiff alleges that "[a]ll defendants conspired in the deprivation of rights retained by petitioner and protected by the constitution in violation of 18 U.S.C. [§] 241."  (Am. Compl. ¶ 6).  Section 241 makes it a crime for any person to conspire with another person to "injure, oppress, threaten, or intimidate any person" who is freely exercising or enjoying their constitutional rights.  *See* 18 U.S.C. § 241.

13

Section 241 is a criminal statute. It does not provide a civil right of action. It is "available to the federal government alone to prosecute individuals for conspiring to violate the constitutional rights of others." *Yaghoobi v. Tufts Medical Center, Inc.*, 759 F.Supp.3d 176, 179 (D. Mass. 2024). As a result, it cannot serve as a basis for Plaintiff to sue any of the Defendants. Count VI therefore fails to state a viable claim and will be dismissed.[4]

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. As Plaintiff has already been given an opportunity to flesh out factual allegations in support of plausible legal claims and has failed to do so, the Court concludes that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (finding that amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

A final order of dismissal will be entered separately. *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

---

[4] The issue can also be framed as one of standing. Plaintiff does not have standing to bring a criminal action against Defendants, as "the United States Attorney is responsible for the prosecution of all criminal cases within his or her district." *United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996); *see also Jones v. Crisis Intervention Servs.*, 239 F.Supp.3d 833, 836 (D. Del. 2017) (dismissing *pro se* plaintiff's claim asserting 18 U.S.C. § 241 violation for lack of standing).

14